CHANDLER, Justice,
Specially Concurring:
¶ 57. I concur with the majority opinion authored by Justice Graves, holding that *716 Doss received ineffective assistance of counsel. I agree with the majority that Anthony Doss’s trial counsel, Lee Bailey, rendered constitutionally ineffective assistance at the penalty phase of Doss’s trial because he failed to investigate all available evidence in mitigation. I write separately to additionally express that, in my opinion, counsel’s performance was deficient because he did not obtain records from the Chicago Public School system that would have been generated when Doss was determined to be learning-disabled and placed into special education classes. Had counsel obtained these records, he would have had access to federally-mandated information from teachers, school officials, and Doss’s mother and stepfather quite possibly, regarding Doss’s behavior, homelife, intellectual capacity, and academic functioning.
¶ 58. As established at the evidentiary hearing, Bailey obtained documents from Doss’s public defender in Memphis. These documents included a copy of the public defender’s request for records from Faraday Elementary School in Chicago, which was attached to a one-page copy of Doss’s registration card from the Chicago Public School system. This registration card showed that Doss had been enrolled in the Chicago Public School system through the ninth grade. Bailey’s records from Memphis also included transcripts from Marshall High School, which showed that Doss had attended part of the ninth grade there, and that his last day was March 29, 1988. This was consistent with the evidence that Doss moved from Chicago to Calhoun City, Mississippi, in March 1988.
¶ 59. The registration card shows that the last academic year that Doss attended Faraday Elementary School was the 1986-1987 school year, when Doss was in the eighth grade. Doss turned fourteen in November of that school year. A handwritten note at the bottom of the page containing the copy of the registration card stated: “Anthony Doss received Learning Disabilities Resource Services while at Faraday. All of his school records were sent to Marshall High School including those Special Education Records, s/ [illegible], Counselor.”
¶ 60. According to the 1986 version of regulations promulgated by the United States Department of Education, beginning on October 1, 1977, before special education services were provided to a child, a public agency was required to “have in effect an individualized education program for every handicapped child who is receiving special education from that agency.” 34 C.F.R. § 300.342 (1986), see also Education for All Handicapped Children Act of 1975, Pub.L. No. 94-142, 89 Stat. 773 (codified as amended at 20 U.S.C. §§ 1400-1461 (1982)). An “ ‘individualized education program’ means a written statement for a handicapped child that is developed and implemented in accordance with §§ 300.341-300.349.” 34 C.F.R. § 300.340 (1986). The public agency was to make efforts to include the child’s parents at meetings for the purpose of developing an individualized education program, along with teachers and other individuals. 34 C.F.R. § 300.344 (1986).
¶ 61. An evaluation of a handicapped child was to be conducted by “a multidisciplinary team or group of persons, including at least one teacher or other specialist with knowledge in the area of suspected disability.” 34 C.F.R. § 300.532(e) (1986). The team was to assess the child “in all areas related to the suspected disability, including, where appropriate, health, vision, hearing, social and emotional status, general intelligence, academic performance, communicative status, and motor abilities,” and it was permitted to use tests *717 for assessment purposes. 34 C.F.R. § 300.532(a),(f) (1986).
¶ 62. According to the counselor’s note, Doss received learning-disabilities services at Faraday. For a school-aged child suspected of having a specific learning disability, the evaluation team was to include the child’s regular teacher, or a regular classroom teacher qualified to teach a child of his or her age, and “at least one person qualified to conduct individual diagnostic examinations of children, such as a school psychologist, speech-language pathologist, or remedial reading teacher.” 34 C.F.R. § 300.540 (1986). A determination that a child had a specific learning disability was governed by 34 C.F.R. § 300.541, which stated:
(a) A team may determine that a child has a specific learning disability if:
(a)(1) The child does not achieve commensurate with his or her age and ability levels in one or more of the areas listed in paragraph (a)(2) of this section, when provided with learning experiences appropriate for the child’s age and ability levels; and
(a)(2) The team finds that a child has a severe discrepancy between achievement and intellectual ability in one or more of the following areas:
(a)(2)® Oral expression;
(a)(2)(h) Listening comprehension;
(a)(2)(iii) Written expression;
(a)(2)(iv) Basic reading skill;
(a)(2)(v) Reading comprehension;
(a)(2)(vi) Mathematics calculation; or
(a)(2)(vii) Mathematics reasoning.
(b) The team may not identify a child as having a specific learning disability if the severe discrepancy between ability and achievement is primarily the result of:
(b)(1) A visual, hearing, or motor handicap;
(b)(2) Mental retardation;
(b)(3) Emotional disturbance; or
(b)(4) Environmental, cultural or economic disadvantage.
34 C.F.R. § 300.541 (1986). Pursuant to 34 C.F.R. § 300.543, an evaluation team was required to make a written report of the evaluation’s results, to include a statement of:
(b)(1) Whether the child has a specific learning disability;
(b)(2) The basis for making the determination;
(b)(3) The relevant behavior noted during the observation of the child;
(b)(4) The relationship of that behavior to the child’s academic functioning;
(b)(5) The educationally relevant medical findings, if any;
(b)(6) Whether there is a severe discrepancy between achievement and ability which is not correctable without special education and related services; and
(b)(7) The determination of the team concerning the effects of environmental, cultural, or economic disadvantage.
34 C.F.R. § 300.543 (1986). All information used in making the determination had to be documented. 34 C.F.R. § 300.533(a)(2) (1986). Moreover, a reevaluation of a child was to be conducted every three years, or more frequently if warranted or requested by the child’s parent or teacher. 34 C.F.R. § 300.534(b) (1986).
¶ 63. The United States Supreme Court in Rompilla v. Beard, 545 U.S. 374, 382, 393, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005), recognized that the school records of a defendant who, like Doss, dropped out in the ninth grade, were one avenue counsel fruitfully could have followed to obtain *718 mitigating evidence to meet the State’s case of aggravation. The Memphis public defender’s file placed Bailey on notice that Doss had been designated as learning-disabled while attending the Faraday school. As the applicable regulations make clear, had Bailey obtained the associated documentation, he would have had access to a wealth of information about Doss’s childhood in Chicago which he could have used either as mitigating evidence, or as a lead for locating other mitigating evidence. The evidence unearthed by Doss’s post-conviction counsel about Doss’s impoverished living conditions in Chicago, his family’s abuse at the hands of Sam Brown, his mother’s alcohol abuse, his own early drug abuse, his low I.Q., and his psychological disorders hints at the helpful information this documentation was likely to have contained.[10] In my opinion, Bailey’s failure to obtain this documentation, despite his notice of its existence, constituted deficient performance that combined with the other omissions cited by the majority to prejudice Doss.
¶ 64. Moreover, I am quite confident that Doss was prejudiced by counsel’s deficient investigation. As the majority recognizes, the missing mitigating evidence was very similar to that in Rompilla, such that, taking the evidence as a whole, it “might well have influenced the jury’s appraisal of [Dossj’s culpability.” Rompilla, 545 U.S. at 893, 125 S.Ct. 2456. However, my conclusion that Doss was prejudiced is bolstered by the fact that Doss’s jury actually indicated its ambivalence during penalty-phase deliberations by sending a note to the judge stating: “To Judge: Do we have the option of ‘Life without parole’?” The note plainly shows that the imposition of the death penalty was not a clear-cut decision for the jury. There is a reasonable probability that, but for counsel’s failure to investigate the available mitigating evidence, the penalty phase would not have resulted in a sentence of death.
WALLER, C.J., AND DICKINSON, J., JOIN THIS OPINION.

. I note the fact that Doss was determined to be learning-disabled indicates that his evaluators did not consider him to be mentally retarded. See 34 C.F.R. § 300.541(b)(2) (1986).